12989.   WYNNE *v.* THE STATE.

BLOODWORTH, J. This is a prosecution under what is known as the "labor-contract act," which is embodied in sections 715 and 716 of the Penal Code of 1910. The writer thinks that there is some evidence to support the finding of the jury, and that the judgment should be affirmed. A majority of the court are of the opinion that there is no evidence to support the verdict.
*Judgment reversed. Broyles, C. J., and Luke, J., concur. Bloodworth, J., dissents.*
DECIDED DECEMBER 14, 1921.

Accusation of cheating and swindling; from city court of Eastman — Judge Franklin. May 12, 1921.

W. W. Bond, the prosecutor, testified: " On the 27th day of September, 1919, Tom Wynne, the defendant, contracted with me in Dodge county, Georgia, to perform for me, on the farm on which I now live, in Lee's district of Dodge county, Georgia, services as a general farm laborer, such as I would require of him. He was to have begun work under this contract on the 29th day of September, 1919, and was to have worked from said date six months under said contract. He was to get as his wages under said contract $1 per day for days actually made. . . At the same time that he made this contract with me I let him have as an advance on his wages the sum of $10 in money. . . He never worked any at all under said contract, nor has he paid back any part of said $10. I left home on Monday morning, September 29, 1919. . . Tom had not started to work when I left home. I went to Atlanta, and was there in a hospital for about ten days or two weeks. I never saw the defendant any more until I saw him here in the Eastman jail, in October, 1920, after I had sworn out

a warrant and had him arrested. . . I asked him why he left and did not stay to do the work. He told me at first that he left because he was afraid of his brother-in-law, who was then a hand on my place. . In January, 1921, he told me that the reason he left me was that he went up in Greene county, looking for his wife, who had left him when he was away in the army. He never complained of being sick. He was well and robust when he made the contract with me. . . and I know of no reason why he did not perform the labor he contracted to do. By reason of his failure to do the labor or to repay me, I have suffered a loss and damage of $10." Virgil Frazier testified: " I was a hand working on Mr. Wallace Bond's place at the time Tom Wynne was working there, about the latter part of September, 1919. After Mr. Wallace left home to go to Atlanta that Monday morning Tom Wynne came to me and wanted to borrow a gun to take to the field with him. I didn't have one, so he borrowed one from another one of the hands on the place. He went to work on Mr. Bond's place on Sugar Creek. He worked there that day and till dinner time the next day. He asked about where Mr. Wallace was, and then said he was going to leave, and he then left, Tuesday after dinner, the next day after Mr. Wallace left for Atlanta on Monday. . . At the time he left home he was well, hardy, and able to work."

The defendant, in his statement at the trial, said: " I worked on Mr. Bond's farm just like he told me to do, on Monday and till Tuesday dinner after he left for Atlanta. That gun that Virge has just told you about was a gun I wanted to take with me to the field. I was working away over on the swamp, the other side of Sugar-Creek, and I was just naturally scared to work way back there by myself. That's what Virge was talking about when he said I tried to borrow a gun from him. On Tuesday, after I found that Mr. Wallace had gone to Atlanta, and I didn't know what to do, as he was all I had to depend on, I left and went up to Greene county, looking for my wife. I was aiming to come back and work with Mr. Wallace, but after I got up there I got sick, and then when I got well I had to go to work. I sure didn't aim to beat Mr. Wallace out of his money when I got it from him."

*M. J. Carswell,* for plaintiff in error. *D. D. Smith, solicitor,* contra.